```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
ACTORS' EQUITY ASSOCIATION,                                            :
                                                                       :
                                Plaintiff,                             :
                                                                       :   21 Civ. 937 (JPC)
                -v-                                                    :
                                                                       :   OPINION AND ORDER
RC CHRISTMAS LLC,                                                      :
                                                                       :
                                Defendant.                             :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Actors' Equity Association ("AEA") brings this action against RC Christmas LLC seeking to confirm and enforce an arbitrator's award and obtain attorneys' fees and costs. Dkt. 13 ("Motion") at 1. AEA's Motion is unopposed, as RC Christmas has neither appeared before this Court nor submitted an opposition. For the reasons below, the Court grants the Motion, confirms the arbitration award, and awards attorneys' fees and costs.

## I. Background

**A.     Facts**

RC Christmas, an entity operated by Jeffrey Chrzczon, produced "Ruben and Clay's Christmas Show," "a limited-run Broadway Christmas variety show reuniting former American Idol contestants Clay Aiken . . . and Ruben Studdard." Dkt. 14 ("Singer Decl.") ¶ 14. To produce the show, RC Christmas employed actors and stage managers represented by AEA, a labor union. Singer Decl., Exh. B ("IPA") at 1. On January 24, 2019, AEA and RC Christmas executed a collective bargaining agreement, called the Independent Producer's Agreement, that covered the terms and conditions of the work of the show's actors and stage managers. IPA at 1; *see also*

Singer Decl., Exh. D ("Arbitration Stipulation of Facts") ¶ 1.  In the Independent Producer's Agreement, RC Christmas "agree[d] to be bound by all terms and conditions contained in the . . . Production Contract," an agreement between AEA and the Broadway League.  IPA § 2; *see also* Singer Decl., Exh. A ("Production Contract") at 1.  All performers in the show also entered into individual employment contracts with RC Christmas that were enforceable under the Production Contract.  Singer Decl. ¶ 9; Production Contract § 16.

Pursuant to the Production Contract, unless otherwise provided, "any dispute . . . relating to the interpretation or application of the Collective Bargaining Agreement . . . shall be submitted to the Grievance Committee," "and, if not decided by the Grievance Committee, may be submitted to arbitration."  Production Contract § 4.  The Production Contract further provided that "[t]he award of the Arbitrator shall be final and binding on all parties."  *Id.* § 4(D)(2).  The Independent Producer's Agreement "deleted" the Production Contract's "provisions for [the] Grievance Committee," but stated that the Production Contract's "[a]rbitration provisions remain in full force and effect."  IPA § 2(b).

On September 25, 2019, AEA sent RC Christmas a written arbitration demand alleging "the failure of RC Christmas to pay various amounts owed under the collective bargaining agreement and individual employment contracts."  Singer Decl., Exh. C ("Arbitration Demand").  The allegedly missing payments included "salary payments for Clay Aiken and Julian Diaz Grandados, withheld but unpaid dues, withheld but unpaid 401(k) deferral contributions on behalf of various Actors, deducted but unpaid commissions for various Actors, as well as unpaid cash receipts."  *Id.*  On December 6, 2019, AEA and RC Christmas stipulated in the arbitration that RC Christmas owed $15,347.38 to AEA, but RC Christmas disputed the payments allegedly owed to Aiken.  Arbitration Stipulation of Facts ¶ 2.  Aiken's individual contract required RC Christmas

to pay Aiken $25,000 per week for himself and $5,000 per week for his agent. Singer Decl. ¶ 24. According to AEA, RC Christmas failed to make any payments due for two weeks of the production, and thus owed Aiken a total of $60,000. *Id.* ¶¶ 25, 27; *see also* Arbitration Demand.

On December 10, 2019, the arbitrator, Alan R. Viani, held a hearing at which he heard testimony from Aiken and Chrzczon. Singer Decl., Exh. E ("Award") at 1, 4. Viani issued an eight-page Opinion and Award on February 3, 2020, ruling for AEA in all respects and directing RC Christmas to pay both the disputed amounts owed to Aiken (*i.e.*, $60,000) and the undisputed amounts (*i.e.*, $15,347.38). *Id.* at 7. As to the amounts in dispute, Viani found that RC Christmas had not paid Aiken for the last two weeks of the production without a valid contractual basis to fail to make those payments. *Id.* at 4-7. As a result, not counting attorneys' fees and costs, Viani found that RC Christmas owes AEA $75,347.38. *See id.* at 7; Singer Decl. ¶¶ 23-25, 36. RC Christmas has failed to pay the awarded amount. Singer Decl. ¶ 27.

**B.     Procedural Background**

AEA filed the Complaint on February 3, 2021. Dkt. 1.[1] AEA served RC Christmas with the summons and the Complaint on February 22, 2021. Dkt. 6. On March 24, 2021, the Court issued a briefing schedule, setting an April 6 deadline for AEA to move to confirm the arbitration Award and an April 20 deadline for RC Christmas to oppose. Dkt. 11. On April 1, 2021, AEA moved to confirm. Also on that date, AEA filed additional affidavits of service, confirming that RC Christmas had been served with the Motion and the Court's briefing schedule. Dkts. 12, 16. With still no appearance from RC Christmas, nor any opposition to the Motion, the Court considers the Motion unopposed.

---

[1] The Complaint was filed exactly one year after the Award, within the one-year statute of limitations for confirmation under the Federal Arbitration Act. 9 U.S.C. § 9.

## II.  Discussion

### A.  The Arbitration Award

#### 1.  Applicable Law

"Judicial review of a labor-arbitration decision pursuant to [a collective bargaining] agreement is very limited." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," and "[o]nly a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quotations omitted). "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n*, 532 U.S. at 509. "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," "serious error does not suffice to overturn his decision." *Id.* (quotations omitted). "It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Id.* (quotations and alterations omitted).

When, as here, a petition to confirm an arbitration award is unopposed, courts generally treat the petition "as akin to a motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 109. Although the Court grants significant deference to the arbitrator's decision, an unopposed confirmation petition "fail[s] where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (quotations omitted).

### 2. Analysis

AEA has shown that there is no genuine issue of material fact precluding confirmation. RC Christmas was a party to the Independent Producer's Agreement, which bound RC Christmas to also comply with the Production Contract. IPA § 2. The Production Contract, in turn, enforced the actors' individual contracts. Production Contract § 16. The Production Contract allowed the submission of any dispute relating to the interpretation or application of the Independent Producer's Agreement to arbitration. *Id.* § 4. And the Independent Producer's Agreement reaffirmed that arbitration provision. IPA § 2(b). RC Christmas admitted that it breached the relevant agreements with respect to certain amounts owed. *See* Arbitration Stipulation of Facts. With respect to the amounts in dispute, *i.e.*, those arising from RC Christmas's failure to pay Aiken for two weeks of the production, the arbitrator "f[ound] no support in the record for the [RC Christmas]'s defense." Award at 6.

There is no suggestion that Viani lacked even a "barely colorable justification" for his decision. *D.H. Blair & Co.*, 462 F.3d at 110 (quotations omitted). On the contrary, he heard from witnesses, interpreted the relevant contracts, and issued a reasoned decision within the bounds of his authority. *See generally* Award. Although AEA has "not presented this Court with copies of all the materials on which the arbitrator relied," most notably Aiken's individual contract, "there is no reason to doubt the arbitrator's interpretation of those materials." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. C K S Woodworks, Inc.*, No. 20 Civ. 2556 (JPC), 2021 WL 734959, at *3 (S.D.N.Y. Feb. 24, 2021) (quotations omitted). In sum, nothing suggests "that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was

contrary to law." *Id.* (quotations omitted).  The Court therefore confirms AEA's timely application for confirmation of the Award.

### B.     Attorneys' Fees and Costs

#### 1.  Legal Standards

AEA has also requested $4,485.46 in attorney's fees and $469 in costs arising out of its efforts to confirm the Award.  *See* Motion at 11; Singer Decl. ¶¶ 29, 32-36.  Generally, "in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award," which the Labor Management Relations Act does not provide.  *Int'l Chem. Workers Union, Loc. No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985).  But a court may award attorney's fees "[p]ursuant to its inherent equitable powers . . . when the opposing counsel acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Id.* (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)).  "[W]hen a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded."  *Id.* (quotations omitted).

In determining whether a requested fee is reasonable, courts look to the total hours billed and the rates at which those hours were billed.  "A reasonable hourly rate is what a reasonable, paying client would be willing to pay."  *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund*, 2021 WL 734959, at *4 (quotations omitted).  An attorney's hourly rate is considered reasonable when it is "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Id.* (quotations and alterations omitted).

To allow the Court to determine whether time was reasonably expended, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that

specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are 'excessive, redundant, or otherwise unnecessary' are to be excluded." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

2. **Analysis**

RC Christmas has not appeared or defended this action and has therefore offered no justification for failing to abide by the arbitrator's decision. *See N.Y.C. Dist. Council of Carpenters Pension Fund v. Angel Const. Grp., LLC*, No. 08 Civ. 9061 (RJS), 2009 WL 256009, at *3 (S.D.N.Y. Feb. 3, 2009) ("Here, Defendant has failed to appear or in any way defend this confirmation action, and thus it is axiomatic that Defendant has offered no justification for its failure to abide by the Award."); *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund*, 2021 WL 734959, at *4. Accordingly, the Court finds that an award of fees and costs is proper in this case.

In support of its application for fees, AEA has provided billing records reflecting 17.4 hours billed at $254.30 per hour by Olivia R. Singer, an associate, and 0.6 hours billed at $101 per hour by George T. Kramer, a paralegal. Singer Decl. ¶ 32; *id.* at Exh. F at 1. As an initial matter, the Court finds that the 18 hours spent on this case are reasonable and are not duplicative.

The Court next turns to the requested hourly rates. Ms. Singer graduated from the Northeastern University School of Law in 2015, and has specialized in the representation of labor unions, employees, and employee benefit plans since that time. Singer Decl. ¶ 34. Ms. Singer's charged rate aligns with prevailing rates for similar work in this District. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship,*

*Journeyman Retraining, Educ. & Indus. Fund v. Eclipse Constr. Servs. Inc.*, No. 21 Civ. 7868 (GHW), 2021 WL 5567752, at *5 (S.D.N.Y. Nov. 26, 2021) (approving rates of $350 per hour for a 2014 law school graduate and $275 per hour for a 2016 law school graduate); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr. Inc.*, No. 21 Civ. 4582 (KPF), 2021 WL 4868589, at *7 (S.D.N.Y. Oct. 18, 2021) (approving rates of $325 per hour for a 2014 law school graduate and $225 per hour for a 2020 law school graduate); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund*, 2021 WL 734959, at *4 (approving a rate of $325 per hour for a 2014 law school graduate). The Court thus approves Ms. Singer's hourly rate of $254.30 as reasonable.

The Court also finds that the requested rate of $101 for Mr. Kramer, a paralegal, is reasonable. *See, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund*, 2021 WL 734959, at *5 (approving a rate of $120 per hour for a legal assistant).

Accordingly, AEA's request for attorneys' fees is granted. The Court also grants AEA $469 in costs, reflecting the court filing fee and service costs. Singer Decl., Exh. F at 3; *see, e.g., Juliff v. Headout, Inc.*, No. 20 Civ. 699 (JPC), 2021 WL 3887764, at *4 (S.D.N.Y. Aug. 31, 2021).

### III. Conclusion

For the reasons above, the petition to confirm the arbitration award is granted. The Clerk of Court is respectfully directed to enter a judgment of $80,301.84, which consists of the arbitration Award, reasonable attorneys' fees, and costs. The Clerk of Court is also respectfully directed to close this case.

SO ORDERED.

Dated: April 26, 2022
New York, New York

JOHN P. CRONAN
United States District Judge